IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID CALZARETTA and AABO, LLC, | )<br>)<br>) |
| Plaintiffs/<br>Counter-Defendants, | )<br>)<br>) |
| v. | )<br>) |
| NICHOLAS E. REZNY;<br>ACRDGROUP, LLC; ACRD2, LLC;<br>ACRD4, LLC; ACRD5, LLC, | )<br>)<br>)<br>) |
| Defendants/<br>Counter-Plaintiffs. | )<br>)<br>)<br>) |

No. 17 C 2408

Magistrate Judge
Maria Valdez

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Counter-Defendants' Motion to Dismiss the Counter-Complaint [Doc. No. 39]. For the reasons that follow, the motion is granted.

## BACKGROUND[1]

Plaintiff David Calzaretta filed a complaint alleging various federal and state claims related to Defendant Nicholas E. Rezny's alleged failure to return $50,000 Plaintiff had given him to invest in real estate. The primary claims in the case are described more fully in *Calzaretta v. Rezny*, No. 17 C 2408, 2017 WL 6039965 (N.D. Ill. Dec. 6, 2017).

---

[1] The facts of the counterclaim are taken as true for purposes of this motion to dismiss.

1

On October 1, 2017, Defendant filed a two-count counterclaim on behalf of himself and intervenor/Counter-Plaintiffs ACRDGroup, LLC; ACRD2, LLC; ACRD4, LLC; and ACRD5, LLC (collectively, the "ACRD Parties") against Calzaretta and AABO, LLC ("AABO").[2] The ACRD Parties are Wisconsin limited liability companies whose sole member is Rezny. The ACRD Parties owned the real estate expected to be purchased by Plaintiff in the transaction at issue in the complaint.

AABO is a Wisconsin limited liability company organized by Rezny whose sole members are Plaintiff Calzaretta and Defendant's father Gerald Rezny (hereinafter "Gerald"). AABO was organized in order to purchase and/or manage the real estate at issue in the complaint. The counterclaim alleges that Gerald was listed as a member due to a non-compete agreement between Rezny's banker and the banker's former employer. The AABO operating agreement provided that Calzaretta had an 81% ownership share, and Gerald had a 19% share.

According to the counterclaim, on or about November 21, 2016, Calzaretta, on behalf of AABO, signed separate Offers to Purchase ("Offers") seven parcels of real estate from the ACRD Parties. Rezny accepted the Offers around November 28, 2016. Calzaretta received tentative bank financing for the purchase in late November 2016.

Each of the seven Offers included a line item on which the parties could fill in the amount of and delivery date of earnest money accompanying the offer. The

---

[2] The amendment was allowed over Plaintiff's timeliness objection, and Plaintiff later filed the present motion to dismiss on the merits.

2

section was blank on each Offer. Calzaretta allegedly agreed to pay Rezny a total of $150,000 in earnest money for all seven properties, and on December 12, 2016, Rezny emailed Calzaretta a Down Payment Agreement ("DPA") referencing the $150,000; Calzaretta never returned the DPA to Rezny. Rezny believes Calzaretta actually read and reviewed the agreement, however, because Calzaretta wired him $150,000 on December 13, 2016, and the email attaching the DPA included a separate attachment giving wire instructions.

Immediately after the wire transfer on December 13, Calzaretta asked that the funds be returned, and Rezny sent back a total of $100,000. The counterclaim alleges that Calzaretta falsely told Rezny that he needed the money returned because the transfer had triggered a taxable event, and he would repay the $100,000 to Rezny the following day. He never sent the money, however, and instead sued Rezny for the return of the remaining $50,000, which is the subject of the present complaint. Calzaretta ultimately refused to close on the property sales, and to date, Rezny has been unable to refinance or sell any of the properties.

Count I of the counterclaim alleges that Calzaretta and AABO breached the Offers by failing to close on the properties, resulting in damages to Counter-Plaintiffs in the form of maintenance costs, taxes, debt service, and other expenses. Counter-Plaintiffs seek an award of the $100,000 earnest money as liquidated damages pursuant to the default provisions of the Offers and an order requiring strict performance of the Offers by Counter-defendants. Count II of the counterclaim, entitled "Equitable Estoppel," alleges that Counter-Defendants made

3

false representations to induce Rezny to return the earnest money; it would thus be inequitable to allowing Calzaretta to proceed on his claim for the $50,000.[3] Accordingly, Counter-Plaintiffs seek a declaration that Calzaretta is equitably estopped from asserting facts and claims to recover the $50,000 in this litigation.

## **DISCUSSION**

### I.  JUDICIAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to decide the merits of a case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In determining whether to grant a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

However, "a plaintiff's obligation to provide the grounds for entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative

---

[3] The counterclaim speaks in terms of "Plaintiffs," rather than only Calzaretta, but he alone is seeking the return of the $50,000; AABO is not a party to the underlying claims.

level." *Id.* The Seventh Circuit has read the Twombly decision as imposing "two easy-to-clear hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concerta Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (internal citations and quotations omitted). In determining what "plausibly" means, the Seventh Circuit has explained that "the complaint must establish a nonnegligible probability that the claim is valid; but the probability need not be as great as such terms as 'preponderance of the evidence' connote." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010).

## II. EQUITABLE ESTOPPEL

The Court will first address the counterclaim of equitable estoppel. As pleaded, the claim seeks no affirmative relief but is instead an avoidance defense of estoppel as described in Rule 8(c). The motion to dismiss is therefore granted as to Count II, and the equitable estoppel claim will be construed instead as an affirmative defense to Calzaretta's claims against Rezny.

## III. BREACH OF CONTRACT

Counter-Defendants argue the breach of contract claim should be dismissed because (1) Counter-Plaintiffs have no claims against Calzaretta; (2) the DPA was a counteroffer that negated any alleged contract created by the Offers; and (3) the DPA required a signature and was thus ineffective.

5

### A. <u>Calzaretta</u>

The breach of contract claim is brought against both Calzaretta and AABO, the limited liability company formed by Rezny and of which Calzaretta was the majority-owning member. The only allegations related to Calzaretta are that he signed the Offers on behalf of AABO, he sent the $150,000 earnest money to Rezny, he requested an immediate refund of that money, and he failed to close on the purchases.

The counterclaim and its exhibits establish that all of the agreements at issue in the case are between Counter-Plaintiffs and AABO. Calzaretta argues that his only involvement was in his capacity as a member of AABO, not Calzaretta personally. "According to firmly established legal principles, the corporation is recognized as a legal entity, separate and distinct from its shareholders. The obligations of the corporation are the responsibility of the corporate entity, not the shareholders, who are liable only for the amount they voluntarily put 'at risk' in the business venture." *Consumer's Co-op. of Walworth County v. Olsen*, 419 N.W.2d 211, 213-14 (Wis. 1988) (citation and internal quotation omitted).

Counter-Plaintiffs respond that Calzaretta is personally liable to them because AABO was not adequately capitalized and failed to follow corporate formalities. Under Wisconsin law, an exception to the general rule limiting shareholder liability may exist "where applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Id.* at 214 (citation and internal quotation omitted).

Although the response brief claims that AABO had no bank account, never held any assets, and was never more than a shell, the counterclaim contains no allegations that would even suggest a plausible basis to pierce the corporate veil. *See id.* (repeating the admonition that "limited shareholder liability must not be dispensed with lightly").

Moreover, to the extent there were any issues with corporate formalities or capitalization, the counterclaim makes clear that they were fully known to Rezny, who formed the corporation on behalf of Calzaretta and his own father Gerald for the sole purpose of purchasing the real estate from the ACRD Parties, not to be an ongoing concern. Rezny's suggestion that he was surprised by any facts related to AABO's creation, or that AABO and Calzaretta were using the corporate form to defraud him, is belied by his own allegations. *Id.* at 221-22 (applying waiver and estoppel principles in the context of corporate veil-piercing). The claim against Calzaretta therefore must be dismissed.

    B.    **AABO**

There are two separate types of documents in this case – the Offers and the DPA. The Offers lack any discussion of earnest money; the DPA deals almost exclusively with earnest money, including the amount, delivery date, and treatment thereof. Counter-Defendants argue that the breach of contract claim must be dismissed for several alternative reasons, including: (1) the Offers are not enforceable contracts because they did not contain a material term, *i.e.*, earnest money; (2) the DPA constituted a counteroffer, negating the Offers, because it

included the first reference to earnest money; and/or (3) the DPA required a signature but was never signed by Calzaretta or any other AABO representative. Counter-Plaintiffs respond that the Offers were valid contracts by themselves, and the DPA was not a counteroffer but instead reflects the parties' negotiation and understanding about earnest money.

The Court need not determine, as Counter-Defendants urge, that the Offers are unenforceable for lacking the earnest money term, because Counter-Plaintiffs' own account of the contract establishes that no enforceable agreement was created. Counter-Plaintiffs contend that the DPA was not a counteroffer but instead recites in a single document the total amount of earnest money to be paid for the package of properties, rather than listing seven separate amounts on the seven different Offers. Accordingly, Counter-Plaintiffs allege that a single contract to purchase existed; it was memorialized in separate agreements for the parties' convenience.

However, the counterclaim admits that the DPA was never signed and returned by AABO, and the Offers provide that "Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical copies of the Offer."[4] (Counterclaim, Ex. B at 1:23-24.) Assuming, as this Court must, that the DPA did not represent a counteroffer but instead was part of the same contract as the Offers, the plain language of the agreement establishes that no contract was formed until it was signed and exchanged; it is thus irrelevant that Calzaretta ultimately did wire earnest money to Rezny. *See Craigs, Inc. v. Gen. Elec. Capital*

---

[4] The Offers and DPA were attached as exhibits to the counterclaim and therefore can be considered on a motion to dismiss. *See Albany Bank & Tr. Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

*Corp.*, 12 F.3d 686, 688 (7th Cir. 1993) (quoting *Hortman v. Otis Erecting Co.*, 322 N.W.2d 482, 485 (Wis. Ct.App.1982)) ("'[W]hen parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right by process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made.'"). The Court may not read any ambiguity into the clear, unambiguous language of the contract's definition of acceptance. Because the contract as a whole was not accepted by its own terms, the breach of contract counterclaim must be dismissed.

## CONCLUSION

For the foregoing reasons, Counter-Defendants' Motion to Dismiss [Doc. No. 39] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:   April 23, 2018**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**